[No. 59434-1.   En Banc.   April 22, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. ROGELLE MOHAMMAD HARRIS, *Appellant*.

*Gary Ival Gaer* and *Robert Leen,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Kyron Huigens, Appellate Deputy,* for respondent.

UTTER, J. — Rogelle M. Harris appeals his Pierce County conviction for assault in the first degree. He was charged with attempted murder in the first degree, but found not guilty of that crime. Harris was found guilty of assault, which the jury was instructed was a lesser included offense of attempted murder in the first degree. On appeal, he challenges the court's instructions on first degree assault. We hold the trial court erroneously instructed the jury that assault is a lesser included offense of attempted murder in the first degree. Accordingly, we reverse Harris's conviction.

The charge of attempted murder arose out of a gang-related shooting in the Hilltop area of Tacoma on the night of March 27, 1990. The State's evidence showed that the defendant and one Melvin Johnson, both gang members from Seattle, were cruising the area in a Cadillac. Harris was driving. He parked the car in a convenience store lot and talked to some women there. One of the women saw a gun lying against his leg as he sat in the car. Two other cars, carrying several members of a Tacoma Crips gang, drove into the parking lot. One of the Crips saw Harris produce a gun. Then he and Johnson drove away. The Cadillac returned 3 or 4 minutes later, at which

time the passenger pointed a gun out the window, shouted "Hey", and fired a volley of shots at the group of Crips standing in front of the store. Two of them were wounded, as was a female bystander. The Cadillac sped away, only to be stopped by police a few minutes later. Harris was still driving and Johnson was in the passenger seat. When they were stopped, Harris told the police that he had heard gunshots "near the car", but denied knowing who had fired them. A test of Johnson's hands for primer residue at the police station was consistent with his having fired a gun.

At trial, defendant testified that he knew Johnson had brought a gun with him from Seattle, but denied any intention to get involved in a shooting. He said that when he and Johnson were at the convenience store, several of the Crips drove up and started "acting funny". The Crips were yelling "snitches" at them, and one of the Crips reached inside his jacket as if to pull a weapon. Harris became frightened and started to drive away. As he did so, he saw a Crips member run toward them. Johnson reached under the car seat for his gun and fired "three or four" shots. Harris did not see if anyone was hit. Johnson threw the gun into a nearby yard as they drove away.

Harris's trial was severed from Johnson's. After trial, the jury was instructed on the elements of attempted murder in the first degree, accomplice liability, and the lesser included offenses of second degree murder, first degree assault, and reckless endangerment. Because no one was killed in the gunfire, the jury was instructed on the elements of attempt: A person is guilty of an attempt to commit a crime if, "with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).

The charge of attempted murder went to the jury on a theory of accomplice liability. Over defense counsel's objection, the jury was instructed that assault was a lesser included offense of attempted murder. The jury convicted Harris of first degree assault. Harris appealed his conviction to Division Two of the Court of Appeals, which certified the case to this

court for determination. Harris argues that the conviction was erroneous because (1) he was not charged with assault; and (2) assault is not a lesser included offense of attempted murder.

## I
### WASHINGTON LAW

Washington Supreme Court case law on lesser included offense instructions is straightforward. The jury may find an accused guilty of a crime not charged if it is "an offense the commission of which is necessarily included within that with which he is charged in the indictment or information." RCW 10.61.006. To find an accused guilty of a lesser included offense, the jury must, of course, be instructed on its elements. A lesser included offense instruction is proper when: (1) each of the elements of the lesser offense is a necessary element of the offense charged (a legal test); and (2) the evidence supports an inference that the lesser crime was committed (a factual test). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). Stated differently, if it is possible to commit the greater offense without committing the lesser offense, the latter is not an included crime. *State v. Bishop*, 90 Wn.2d 185, 191, 580 P.2d 259 (1978) (citing *State v. Roybal*, 82 Wn.2d 577, 583, 512 P.2d 718 (1973)).

The first prong of the *Workman* test, the legal prong, is at issue in this case. Specifically, the question presented is whether each of the elements of first degree assault is a necessary element of attempted first degree murder. As charged in this case, first degree murder requires a premeditated intent to cause the death of another. RCW 9A.32.030(1)(a). A person is guilty of criminal attempt if, "with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). Assault in the first degree requires that, with intent to inflict great bodily harm, a person "[a]ssaults another with a firearm or any deadly weapon or by any force or means likely to

produce great bodily harm or death; . . .". RCW 9A.36.011-(1)(a).

Harris concedes a first degree assault is included within the crime of premeditated murder in the first degree. He argues, however, that first degree assault is not included within attempt to commit first degree murder, because one may take a substantial step toward committing murder — may lie in wait, for example — without ever assaulting the victim. *See State v. Workman*, 90 Wn.2d at 451-52 (adopting the Model Penal Code of the American Law Institute's approach to the definition of "substantial step". Under that approach a substantial step need not be an overt act, as long as it is behavior strongly corroborative of the actor's criminal purpose. Thus, lying in wait for the victim may constitute a substantial step).

For ease of reference the pertinent definitions are set forth in simplified form below:

| | | |
|---|---|---|
| *attempted murder*: | (1) | intent to cause death |
| | (2) | substantial step |
| *assault*: | (1) | intent to inflict great bodily harm |
| | (2) | assaults another with weapon or force |

■ Defendant is correct. As a matter of fact the evidence supports an instruction on first degree assault in this case; Harris was an accomplice to a shooting by Johnson, his passenger. The factual prong of *Workman* is therefore satisfied. The *legal* prerequisite for such an instruction fails, however; the greater offense of attempted murder in the first degree can be committed without necessarily committing an assault. As is evident from the elements listed above, it is possible to commit attempted murder without also committing assault. Because the legal prong of the *Workman* test is not met, assault is not a lesser included offense of attempted murder. The trial court therefore erred in instructing the jury on assault.

■ The State however asks us to revisit the law of lesser included offenses. It contends that because all attempts include the unspecified statutory element of a "substantial step" under RCW 9A.28.020(1), lesser included offenses can never be proper where attempt is the greater crime. The State therefore urges us to create a different rule where the greater offense is attempt. We decline to do so because Washington Supreme Court precedent disfavors it. In addition, the jurisprudential and practical concerns that tacitly underlie our adoption and adherence to the *Workman* test are equally persuasive in the case of attempts as in other categories of crimes. Although we have yet to articulate these concerns, they have been identified by one commentator as follows:

> [the statutory elements approach] offers the most clarity to both practitioners and judges. Thus, perhaps the most compelling reason for adopting the strict standard is the clarity and ease with which it can be applied. Absent a statutory modification, a single determination suffices to categorize the relationship between any two criminal offenses for all subsequent cases. Each party to later criminal proceedings is then on notice regarding the availability of the lesser included offense doctrine and should therefore be better prepared to present an argument specific to the issues known to be in question. . . . This provides an evenhandedness impossible under the other [approaches] and encourages the parties to use the evidence to prove or disprove the case at hand, instead of inviting them to manipulate the proof to accommodate as wide a range of conclusions as possible.

(Footnote omitted.) Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 Brook. L. Rev. 191, 201 (1983-1984), *cited with approval in State v. Jeffries*, 430 N.W.2d 728, 737-38 (Iowa 1988) (adopting a slightly modified version of the statutory elements approach).

## II
### THE DEVELOPMENT OF LESSER INCLUDED OFFENSE LAW IN WASHINGTON

A survey of the development of lesser included offense law in Washington indicates the absence of authority for departing from the statutory approach.

Court rule CrRLJ 6.15(f) provides with respect to lesser included offense instructions:

> **Several Offenses.** The verdict forms for an offense charged or necessarily included in the offense charged or an attempt to commit either the offense charged or any offense necessarily included therein may be submitted to the jury.

RCW 10.61.006 similarly provides:

> [T]he defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged in the indictment or information.

In *State v. Roybal*, 82 Wn.2d 577, 583, 512 P.2d 718 (1973), we clarified the meaning of "necessarily included" as follows:

> A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. . . . Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime.

In *State v. Workman*, 90 Wn.2d at 447-49, we adhered to the statutory approach, but extended the statutory inquiry beyond the explicit statutory language, to include elements necessarily and invariably included in the greater offense. *Workman* involved the question whether unlawfully carrying a weapon (under RCW 9.41.270) was included within the charged crime of first degree robbery. First degree robbery required that the defendant be armed with a deadly weapon in the commission of a robbery. RCW 9A.56.200; *Workman*, 90 Wn.2d at 448. Unlawfully carrying a weapon contained an element not explicit in the definition of attempted first degree robbery, namely carrying a weapon under circumstances warranting alarm for the safety of others, RCW 9.41.270(1); *see Workman*, 90 Wn.2d at 447. We concluded that a lesser included instruction should have been given:

> It is clear that the element of carrying a weapon under RCW 9.41.270, the gross misdemeanor, is a necessary element of the greater crime of first-degree robbery. Likewise, the element of circumstances warranting alarm under the lesser offense is an *inherent characteristic* of an attempt to commit a robbery. The existence of such circumstances therefore qualifies as a necessary element of the greater offense of attempted first-degree

robbery. The first condition of the test for an included offense is thus met here.

(Italics ours.) *Workman*, 90 Wn.2d at 448.

One Court of Appeals case, *State v. Gatalski*, 40 Wn. App. 601, 612-13, 699 P.2d 804, *review denied*, 104 Wn.2d 1019 (1985), subsequently mistook *Workman* to sanction a factual rather than a statutory inquiry. A concurrence in a different case identified the conceptual subtlety in *Workman* that gave rise to the misunderstanding:

> The opinion in *Workman* introduced confusion and uncertainty into the subject of lesser included offenses because, while not following strictly the established rule, the court did not expressly recognize that it was adopting a different rule.

*State v. Partosa*, 41 Wn. App. 266, 274, 703 P.2d 1070 (also misreading *Workman*), *review denied*, 104 Wn.2d 1017 (1985).

A careful reading of *Workman* would have dispelled the confusion. In *Workman* we did not abandon the statutory approach; rather, we modified it to reduce some of its rigidity. We did so by continuing to focus on the statutory elements, but in a manner that no longer rendered dispositive the precise verbal formulation by which they were expressed. *See Workman*, 90 Wn.2d at 447-48.

In *Workman* and subsequent cases, we continued to focus on the statutory elements. In *State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985), for example, we were asked to consider whether possession of stolen property was a lesser included offense of burglary. The defendant in that case conceded that the instruction was properly denied under *Workman*, but urged the court to adopt the standard of the Ninth Circuit on lesser included offenses. *See Johnson*, 100 Wn.2d at 627-28. Under that approach, a lesser included offense instruction must be given whenever (1) the offenses relate to protection of the same interests and (2) "in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented

as part of the showing of the commission of the greater offense." *United States v. Johnson*, 637 F.2d 1224, 1239 (9th Cir. 1980) (quoting *United States v. Whitaker*, 447 F.2d 314, 319 (D.C. Cir. 1971)), *quoted in Johnson*, 100 Wn.2d at 628.

We rejected an expansive reading of *Workman*, explaining that although we tacitly recognized such a test in *Workman*, we did so in a context in which the elements of the lesser offense were *invariably* inherent in the greater offense and were part of the same act. *See Johnson*, 100 Wn.2d at 628.

Our decision in *Johnson* to maintain the statutory approach was prompted by our appreciation of its objective merits. These have been methodically identified by another court as follows: The approach (1) is consistent with the "necessarily included" language of the state rule of criminal procedure; (2) is a clear and therefore easily administrable rule; (3) does not require factfinding or weighing of evidence by the court to determine when a lesser included offense instruction should be given; and, (4) better comports with the constitutional requirement of adequate notice. *See State v. Jeffries*, 430 N.W.2d 728, 737-38 (Iowa 1988).

The interpretation of *Workman* that supports the State's position in this case, *Gatalski*, has been abandoned by the very court that authored it. In *Gatalski*, the offense charged was attempted kidnapping in the first degree. The defendant was convicted of unlawful imprisonment. The Court of Appeals affirmed, despite the fact that not every attempted kidnapping necessarily involves unlawful restraint, because it erroneously read *Workman* to permit an inquiry beyond the statutory elements. *See Gatalski*, 40 Wn. App. at 612-13. In a later case, the Court of Appeals explained the rationale for *Gatalski*'s liberal reading of *Workman*. The *Gatalski* court had created an exception to the statutory approach in the case of attempted crimes, because attempts always contain the element of " 'substantial step', which is not[,] and cannot be[,] statutorily defined." See *Partosa*, 41 Wn. App. at 272 n.6 (also misreading *Workman*).

Since *Gatalski* and *Partosa*, the Court of Appeals has retreated from its position. Thus in *State v. Falco*, 59 Wn. App. 354, 359, 796 P.2d 796 (1990), the Court of Appeals held that communication with a minor for an immoral purpose is not the lesser included offense of attempted statutory rape. The court reasoned that, because it is possible to attempt the greater without *necessarily* committing the lesser, the elements of the lesser offense were not "invariably inherent" in the greater. Significantly, *Falco* recognized that *Johnson* required the elements of the lesser offense to be invariably inherent in the greater. *See Falco*, 59 Wn. App. 354, 357 (citing *State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983) and noting that *Gatalski*, which held to the contrary, failed to cite *Johnson*). *Falco*, 59 Wn. App. at 357 n.1. *See also State v. Baldwin*, 63 Wn. App. 536, 539-40, 821 P.2d 496 (1991) (correctly applying the *Workman* test and declining to follow *Gatalski*).

The Washington Supreme Court has continued to adhere to the statutory approach. As recently as 1989, in *State v. Jackson*, 112 Wn.2d 867, 878, 774 P.2d 1211 (1989), we held that malicious mischief is not a lesser included offense of attempted burglary because one does not *invariably* cause physical damage while attempting a burglary.

This recent Washington Supreme Court decision, in the context of an attempted crime, emphasizes our reluctance to depart from the statutory approach even in the case of attempts. The practical effect of reversing the trial court, however, need not unduly hamper prosecutorial discretion. As a practical matter, the State need only charge the defendant in the alternative to render a lesser instruction proper. Indeed, at oral argument, counsel for the State candidly conceded this is the better practice. The approach we reaffirm today is consistent with Washington Supreme Court precedent, and is likewise consistent with the terms of the statute and court rule, *see* RCW 10.61.006 and CrRLJ 6.15(f), *supra*, which by their very terms contemplate looking to the necessary elements of the lesser included offense.

Harris's conviction is reversed and the case remanded for further proceedings consistent with this opinion.

BRACHTENBACH, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

ANDERSEN, C.J., concurs in the result.